IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                         No. CR 09-3207 JB

ANTHONY MIRABAL, DAVID AGUILAR,
and KEVIN GARNER,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Government's Notice of Intention to Offer Expert Testimony and Motion in Limine for Daubert Ruling on its Admissibility, filed May 28, 2010 (Doc. 78)("Notice"); (ii) Defendant David Aguilar's Motion to Exclude Proposed Expert Testimony and/or in the Alternative for Daubert Hearings, filed June 2, 2010 (Doc. 84) ("Motion to Exclude"); (iii) Aguilar's Motion in Limine to Exclude Opinion Testimony by Government Witnesses on Ultimate Legal Issue, filed June 2, 2010 (Doc. 85)("Motion in Limine); and (iv) Notice of Joinder in Defendant Aguilar's Motions, filed July 23, 2010 (Doc. 104).[1] The Court held a hearing on July 29, 2010. The primary issues are: (i) whether the Court should hold a Daubert[2] hearing to determine whether Plaintiff United States of America's witnesses are experts and the issues on which they can so testify; and (ii) whether the Court should exclude expert testimony that drug traffickers frequently bring associates to drug transactions under rule 704(b) of

---

[1] In this Notice, Defendant Anthony Mirabal joined in Aguilar's Motion to Exclude and Motion in Limine. The Notice contains no additional arguments, so the Court need not deal with it further in this Memorandum Opinion and Order.

[2] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

the Federal Rules of Evidence because it comments on the ultimate issue of the Defendants' mental states. For the reasons stated on the record, and for further reasons consistent with those already stated, the Court will not hold a <u>Daubert</u> hearing on this issue. Because the Court does not believe that the testimony that Aguilar challenges falls under rule 704(b)'s prohibition, the Court will deny the Motion to Exclude and the Motion in Limine.

## **PROCEDURAL BACKGROUND**

In its Notice, the United States asks the Court to: (i) rule pretrial that its experts are experts under rule 702, and thus that they may give opinion testimony on particular topics, or, in the alternative, (ii) to hold a <u>Daubert</u> hearing to help the Court answer those questions. First, the United States asks the Court to deem Forensic Chemist Karen Hall an expert, and allow her to give expert opinions as follows: "Ms. Hall will testify in the instant case about the tests she performed on the substance seized in connection with this case and her determination that the substances at issue contained cocaine, weighing approximately 1971 grams. Ms. Hall's testimony will include her expert opinion and specialized knowledge." Notice at 2. The United States next seeks to introduce as an expert Federal Bureau of Investigation Special Agent Sonya Chavez.

> [She] is expected to testify concerning the street value of the drugs seized from Defendants on October 15, 2009. Agent Chavez is further expected to testify about certain practices typical of those involved in narcotics trafficking, including the use of firearms as tools of the drug trade and the fact that it is not unusual for drug dealers to bring associates with them to a drug transaction in order to protect the transaction from outside interference.

Notice at 2.

Aguilar's first motion asks the Court to either exclude some portions of these witnesses' testimony or hold a <u>Daubert</u> hearing to determine what portions of the desired testimony, if any, the Court should allow. Aguilar first argues that the United States' Notice does not list Chavez'

expected opinions with sufficient specificity to determine, pretrial, whether her qualifications justify allowing her to testify to those opinions. He also asserts the Notice fails to give the basis of the opinions. He argues that the United States did not make the necessary disclosures of the witnesses' expert opinions under rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

Aguilar then challenges several specific aspects of Chavez' qualifications and testimony. He challenges her qualifications to testify about quantification of drugs -- cocaine in particular -- and the duties of different individuals in a narcotics transaction. He asserts the testimony is thus irrelevant under rule 402 of the Federal Rules of Evidence and also excludable under rule 702. Aguilar also asserts that Chavez will testify as to other drug investigations in which she was involved and that such testimony will prejudice Aguilar by implying that he was involved in these other drug cases. He also argues that such testimony would cross the line into inadmissible profile evidence under United States v. Becker, 230 F.3d 1224 (10th Cir. 2000), and United States v. Robinson, 978 F.2d 1554, 1563 (10th Cir. 1992).[3] Aguilar's Motion in Limine asks the Court to exclude any testimony by the United States' witnesses that "people who conduct drug transactions generally bring associates with them for the purpose of protecting the transaction," because such testimony would be allowing an expert witness to testify to the Defendant's mental state, which is one of the ultimate issues that the jury must decide. Motion in Limine at 2.

The United States opposes both motions. It asserts that Aguilar failed to provide a clear, cogent explanation of what aspects of Chavez' qualifications are insufficient or how a Daubert hearing would clarify any such issues. See United States' Response to Defendant David Aguilar's

---

[3] The Motion to Exclude also includes a request for any material that the United States is required to disclose under Giglio v. United States, 405 U.S. 150 (1972), regarding witnesses that the United States intends to call.

Motion to Exclude Expert Testimony at 4, filed June 15, 2010 (Doc. 91)("Response to Motion to Exclude").  The United States asserts that Chavez must be allowed to testify as to past drug-trafficking investigations to illuminate for the jury the basis of her expert opinions, and thus asks the Court to deny Aguilar's Motion to Exclude.  Moreover, the United States represents that it is unlikely that Chavez will testify "in any great detail regarding previous investigations," and so there is little or no likelihood of jury prejudice.  Response to Motion to Exclude at 6.

In response to Aguilar's Motion in Limine, the United States asserts that the United States Court of Appeals for the Tenth Circuit has held several times that practices of people involved in the drug trade are proper subjects of expert testimony.  See United States' Response to Defendant David Aguilar's Motion to Exclude Opinion Testimony by Government Witnesses on Ultimate Legal Issue at 3, filed June 15, 2010 (Doc. 92)("Response to Motion in Limine")(citing United States v. Burkley, 513 F.3d 1183 (10th Cir. 2008), United States v. McDonald, 933 F.2d 1519 (10th Cir. 1991), and United States v. Conyers, 118 F.3d 755 (D.C. Cir. 1997)).  The United States further argues that Chavez is expected to testify only that it is common for drug dealers to be accompanied by other persons, who will act as "muscle" to deter interference with the drug transaction and protect the drugs and proceeds.  Response to Motion in Limine at 3-4.  According to the United States, the Tenth Circuit has rejected the argument that such testimony violates 704(b) as an impermissible comment on the ultimate issue of the defendant's mental state.  See Response to Motion in Limine at 3 (citing United States v. Mendoza, 236 Fed. Appx. 371, 381-82 (10th Cir. 2007), and United States v. Richards, 969 F.2d 849, 854-55 (10th Cir. 1992)).

The Court resolved many of the issues in this motion at the hearing.  First, the Court noted that it is not inclined to exclude either expert in their entirety at this point in the proceeding, although any of the Defendants' attorneys are free to conduct a voir dire of the United States'

experts if they have more specific problems with the expert testifying on certain topics. The Court also noted that, other than outright exclusion of the experts, which the Court was not inclined to do, Aguilar's motion indicated that he had no problem with Hall's testimony. Rather, Aguilar appears concerned only with aspects of Chavez' testimony. No party disagreed with this assessment.

Erlinda Johnson, Aguilar's attorney, agreed that the Court would not need to hold a Daubert hearing if Chavez was expected to testify only to the facts to which the United States represented she would testify. At that point, Ms. Johnson agreed, the issue would be a legal one regarding whether Chavez' qualifications were sufficient to authorize her to make those statements, and whether the statements were barred under the Federal Rules of Evidence. Ms. Johnson essentially conceded that Chavez' qualifications were adequate, stating instead that she was concerned that some of Chavez' expected testimony was inappropriate for introduction through an expert opinion. See Transcript of Hearing at 12:12-16 (Johnson)("MS. JOHNSON: . . . I'm sure she's highly qualified, but there are some areas of testimony that the Government wishes to get into with her that I would submit to the Court are improper . . . .").[4] She stated that she did not oppose Chavez' testimony that firearms are tools of the drug trade. Ms. Johnson reiterated, however, the concern in her Motion in Limine that Chavez' testimony that it is common for drug traffickers to bring associates to drug transactions would be a comment on Aguilar's mental state and thus inadmissible under rule 704(b). Assistant United States Attorney John Anderson agreed that the United States would limit Chavez' testimony to the two categories expressly mentioned in their Notice: (i) that guns are tools of the drug trade; and (ii) if the Court deems the opinion admissible, that drug traffickers frequently bring associates to drug transactions. At that point, the parties again agreed

---

[4] The Court's citation to the transcript refers to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

that the Court need not hold a Daubert hearing on this matter.

**ANALYSIS**

Based on the curriculum vitae the United States submitted for each of its expert witnesses, and the issues on which they are expected to opine, the Court finds that Hall and Chavez are qualified as experts in their respective fields. The parties have conceded that a Daubert hearing is not necessary in this case, so the Court will not hold a Daubert hearing. The only remaining issue is whether the Court should allow Chavez to testify that, based on her experience, it is common for drug traffickers to bring associates with them when executing drug transactions, to deter outside interference with the transaction and to protect the drugs and the transaction proceeds. Aguilar argues that this testimony is inadmissible under rule 704(b) because it constitutes impermissible expert testimony as to the Defendants' state of mind, and therefore the Court should exclude it. The United States argues that Chavez' proposed testimony is not direct testimony about a defendant's mental state that rule 704(b) prohibits. The Court will deny Aguilar's motion.

Under the common law, there was a doctrine stating that witnesses could not give their opinion or conclusions on an ultimate issue of fact. "The stated justification was sometimes that such testimony usurps the function or invades the province of the jury." 1 K. Broun, McCormick On Evidence § 12 (6th ed. Supp. 2006). The Federal Rules of Evidence reflect that the ultimate-issue rule has been abolished. See United States v. Smith, 156 F.3d 1046, 1054 (10th Cir. 1998). Under rule 704(a), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). The only textual exception to rule 704(a) is found in 704(b), which states that an expert "testifying with respect to the mental state or condition of a defendant in a criminal case" may not "state an opinion or inference as to whether the defendant did or did not have the mental state or

condition constituting an element of the crime charged or of a defense to the crime." Fed. R. Evid. 704(b).  Put another way, "[a] prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea."  United States v. Reyez, 183 Fed. Appx. 755, 759 (10th Cir. 2006)(quoting United States v. Morales, 108 F.3d 1031, 1037 (9th Cir. 1997)).

In support of his motions, Aguilar relies upon United States v. Gutierrez-Farias, 294 F.3d 657 (5th Cir. 2002).  The Court finds Aguilar's reliance misplaced.  In United States v. Gutierrez-Farias, the United States Court of Appeals for the Fifth Circuit found that certain testimony by a witness for the United States "crosse[d] the borderline long recognized by this court between a mere explanation of the expert's analysis of the facts and a forbidden opinion on the ultimate legal issue in the case." 294 F.3d at 663.  In that case, however, the Fifth Circuit summed up the testimony as: "In most drug cases, the person hired to transport the drugs knows the drugs are in the vehicle." United States v. Gutierrez-Farias, 294 F.3d at 663.  The Fifth Circuit found that "[t]he clear suggestion of [the witness'] testimony is that, because most drivers know there are drugs in their vehicles, Gutierrez must have known too," and found that the testimony was inadmissible under rule 704(b) as evidence of Gutierrez-Farias' mental state.

If this Court were bound by the law of the Fifth Circuit, the Court might be more inclined to grant Aguilar's motion.  There is Tenth Circuit authority, however, that holds contrary to United States v. Gutierrez-Farias.  For instance, in United States v. Richardson, 969 F.2d 849 (10th Cir. 1992), the Tenth Circuit dealt with an objection almost identical to Aguilar's.  United States v. Richardson was a case resolving the appeals of four defendants who were convicted of possession with intent to distribute and conspiracy.  See id. at 851.  None of the appellants was the primary drug

trafficker, but all were present at the time the police executed their sting operation,[5] and were arrested at that time. At the trial, one of the United States' witnesses -- one who was involved in the sting operation but who was also an expert -- testified as follows about what he believed to be the defendants' roles in the transaction:

> The four other persons who were accompanying [the primary trafficker] from St. Louis which was [sic] Mr. Henley, Mr. Boyd, Mr. Russell, and Mr. Richard, all were helpers of [the primary trafficker]. . . . He wants some assistance, some protection just in case anything goes wrong. Therefore, he brought the four defendants. He was a very cautious drug dealer from the start . . . . No drug dealer of a drug deal this size is going to have four persons that don't know anything about it, have them around without a reason.

United States v. Richardson, 969 F.2d at 854.[6]

The appellants in United States v. Richardson challenged these statements as impermissibly testifying to an inference that the defendants had the proper mental state to commit the crimes charged, in violation of rule 704(b). See 969 F.2d at 854. The Tenth Circuit disagreed, holding that "[t]he rule does not prevent [an] expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." Id. at 854-55. The Tenth Circuit found that the United States' witness "testified that[,] based on his experience, a drug dealer will not invite others to participate in this type of transaction who are not aware of the nature of the

---

[5] The Tenth Circuit refers to the situation in United States v. Richardson as a "'reverse' drug sting" operation, because the police officer poses as a seller, rather than a buyer, of narcotics. See 969 F.2d at 852.

[6] Although the opinion is not clear on this point, the fact that the defendants objected under rule 704(b), and that the Tenth Circuit analyzed the witness' testimony as expert testimony, shows that the witness at issue in United States v. Richardson was an expert. See 969 F.2d at 855 ("Danner testified that based on his experience, . . . . Further, he offered his opinion . . . . Hence, the testimony was not prohibited by Rule 704(b) . . . ."). Moreover, as authority for its propositions, the Tenth Circuit in United States v. Richardson cited to case law dealing specifically with expert witness testimony. See id.

transaction," and that such testimony is permissible because the witness "did not expressly draw that conclusion or inference for the jury." Id. at 855 (emphasis added). The Tenth Circuit thus affirmed the district court's decision to allow the testimony. See id.

The Court believes this case, even more than United States v. Richardson, counsels for allowing the expert's testimony. First, taking the Tenth Circuit's language at face value, the only testimony that would violate rule 704(b) is testimony that the defendant had the mental state necessary to commit the crime charged. As long as it takes the jury some inferential step to get from the testimony to the defendants' mental state, the witness' testimony does not violate the rule. Professors Saltzburg, Martin, and Capra agree that this is the approach taken by most courts, although they also appear to find rule 704(b) to be unnecessary and unreasoned. See 3 S. Saltzburg, M. Martin, & D. Capra, Federal Rules of Evidence Manual § 704.02[7], at 704-12 (9th ed. 2006) ("So long as the expert does not testify that the defendant acted with criminal intent, Courts have generally found the Rule 704(b) proscription inapplicable."); id. § 704.02[4], at 704-7 ("In our view, . . . there is no need for the amendment [that added rule 704(b)], and the Rule does more harm than good."). Under that interpretation, Chavez' proposed testimony is permissible, because she will not mention the Defendants at all in these statements, much less their specific mental states. She will testify only to what perpetrators of drug trafficking crimes generally do, in her experience.

Even taking a stricter view of the Tenth Circuit's holding, this case seems to fall within the rule set forth in United States v. Richardson. The expert witness in United States v. Richardson was testifying as to his opinion of the role that each defendant was playing in the drug conspiracy, whereas, in this case, Chavez is only going to testify that drug dealers commonly bring associates when executing drug transactions to deter interference with the transaction and protect the drugs and proceeds. The proposed testimony in this case, therefore, is at least one step further from rule 704(b)

than that in United States v. Richardson. It takes at least one more inference to get from Chavez' testimony to the Defendants' mental state than it did to get from the witness' testimony to the defendants' testimony in United States v. Richardson.

In United States v. Richardson, the jury needed only to draw one conclusion and one inference. The conclusion necessary was that the expert was correct in determining what role each defendant was taking in the drug transaction. The only necessary inference was that, because the defendants were participating in the drug transaction and performing those specified roles, they had the necessary mental state to possess with intent to distribute and commit conspiracy. In this case, the mental state is at least two inferences away from the testimony. After the jury determines that there was an illicit drug transaction, they must first infer that Mirabal brought Aguilar along for the purpose that Chavez suggests. Then they must infer that, because he was present for the purpose of performing that function, that Aguilar had the necessary mental state to commit the crime. In short, if the testimony was permissible in United States v. Richardson, it is permissible in this case.[7]

---

[7] The Tenth Circuit has often cited approvingly the rule set forth in United States v. Richardson, giving no indication that the principles of law which it sets down are outliving their usefulness. Most recently, in United States v. Mendoza, 236 Fed. Appx. 371 (10th Cir. 2007), the Tenth Circuit held that expert testimony

> (1) concerning the difference between drug dealers and users, (2) the ways in which drug dealers dispose of their money, (3) the characteristics of a drug deal, (4) that the scraps of paper found in Mendoza's residence were drug ledgers, (5) that he subpoenaed Mendoza's cellphone subscriber information because cellphones are tools of the trade for drug dealers and are placed under different people's names to avoid detection, and (6) that the meaning of the word 'flip' is to identify the source of supply

did not violate 704(b). 236 Fed. Appx. at 381-83. The witness appears to get into rule 704(b) trouble only when he or she comments specifically on the defendant's knowledge or states that the defendant committed the crime. Compare United States v. Reyez, 183 Fed. Appx. at 759 (holding that a witness' "statement that Mr. Reyez's behavior 'led [him] to believe that Mr. Reyez had knowledge' of the presence of methamphetamine" violated 704(b)), and United States v. Wood, 207

Aguilar's final argument is that Chavez' testimony crosses the line into impermissible profile evidence. He fears the United States might "seek to introduce the opinion of law enforcement as to characteristics of an individual engaged in drug trafficking" for the purpose of showing that the Defendants were engaged in drug trafficking. The Court disagrees, finding Aguilar's reliance on United States v. Becker and United States v. Robinson is also misplaced.

In United States v. Robinson, three defendants were convicted possession with intent to distribute cocaine, conspiracy, and manufacturing cocaine. See 978 F.2d at 1558. The district court admitted, over objection, expert "testimony supporting an inference that the defendants were active members of a gang known as the Crips [and] that the main purpose of the Crips was to sell cocaine." Id. at 1561. The Tenth Circuit briefly addressed whether such evidence was profile evidence, suggesting that profile evidence might be inadmissible, but concluded that it was not. See id. at 1563 ("Here, there is ample evidence of drug trafficking in addition to the gang related items discovered at the apartment, which we conclude are not profile evidence in any event."); id. ("On appeal, [the appellants] frame the issue as one concerning the admissibility of "profile" type evidence. We disagree."). The Tenth Circuit therefore affirmed.

The Tenth Circuit in United States v. Robinson defined profile evidence as evidence of "characteristics that in the opinion of law enforcement officers are typical of a person engaged in

---

F.3d 1222, 1235-36 (10th Cir. 2000)(holding that it violated 704(b) for an expert to testify that a death was a homicide or that acts were done recklessly, because such statements "expressly draw the conclusion or inference" that the defendant had the necessary mens rea to commit the crime) with United States v. Mundy, 97 Fed. Appx. 844 (10th Cir. 2004)(holding that an officers' testimony that "[o]nce you get past an eighth of an ounce, or 3.5 grams, it's been my experience that's always a distributor," does not violate rule 704(b), because the officer "spoke in general terms about the different factors that suggest a particular person is either using or distributing drugs[, rather than] the specific facts in this case"). United States v. Richardson is, however, the most factually analogous case from the Tenth Circuit.

-11-

a specific illegal activity." 978 F.2d at 1564. It distinguished profile evidence from the evidence at issue in that case as follows:

> Generally, profiles are used to detect crime, before the police have investigated or gathered evidence. Conversely, here, the alleged profile characteristics did not necessarily indicate, nor did the expert equate the characteristics to, a specific criminal activity. Rather, the expert testified that these particular items and clues lead him to the conclusion that the defendants were gang members. This evidence was used after the investigation was complete to explain the items found in the possession of the defendants.

United States v. Robinson, 978 F.2d at 1563. See United States v. Becker, 230 F.3d at 1231 (finding that certain testimony was not clearly profile evidence, and thus the district court did not commit plain error in admitting it). In this case, the evidence is not of a profile used to identify someone engaged in illegal activity. The officers believed the Defendants were involved in illegal activity based on observing a controlled drug buy while all three Defendants were in the house. Chavez' testimony will be aimed at establishing the mental state of the Defendants based on her opinion of their likely roles in the drug transaction and conspiracy, as was the case in United States v. Richardson. The Court thus disagrees that Chavez' testimony constitutes profile evidence.

Moreover, the cases indicate that, even if the testimony is profile evidence -- i.e., evidence of individualized characteristics that led the officers to believe the defendants were involved in drug trafficking -- it is fair game for expert testimony if the relevance of the facts would otherwise not be immediately obvious to the jury. See United States v. Becker, 230 F.3d at 1231 ("Tools of the trade may necessitate the appearance of an expert witness if the jury could not understand the significance of possession of those items. We have upheld the admission of expert testimony detailing the significance of a drug dealer's tools of the trade . . . , as well as the admission of expert testimony to explain the meaning of the physical evidence officers found at the arrest scene where the narcotics were confiscated [on that basis.]"); United States v. Robinson, 978 F.2d at 1563-64

-12-


("Similar to tools of the trade, the gang-related items may necessitate the appearance of an expert witness if the jury could not understand the significance of possession of these items."). A jury might not understand, without the expert testimony, why the presence of all three Defendants during the transaction makes it more likely that the Defendants are guilty. The expert testimony is thus admissible even if Chavez' testimony constitutes profile evidence. The Court will therefore deny Aguilar's Motion to Exclude and Motion in Limine. The United States must caution its witnesses to testify precisely as required herein, and the United States may want to lead the witnesses through the more troublesome or treacherous areas of their testimony. Chavez should not comment on Aguilar's knowledge, opine that he committed a crime, or opine that he acted with any particular mental state.

**IT IS ORDERED** that: (i) the request in the Government's Notice of Intention to Offer Expert Testimony and Motion in Limine for Daubert Ruling on its Admissibility that the Court recognize Karen Hall and Sonya Chavez as experts in their respective fields is granted; (ii) the Motion to Exclude Proposed Expert Testimony and/or in the Alternative for Daubert Hearings is denied; (iii) the Motion in Limine to Exclude Opinion Testimony by Government Witnesses on Ultimate Legal Issue is likewise denied. The United States is instructed, however, that it will limit Chavez' testimony to the areas specifically listed in its Notice and with the restrictions to which the United States has agreed and the Court has approved.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
John C. Anderson
Nicholas Jon Ganjei
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Leon Encinias
Albuquerque, New Mexico

    *Attorney for Defendant Anthony Mirabal*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorney for Defendant David Aguilar*

Robert J. Gorence
Gorence & Oliveros, PC
Albuquerque, New Mexico

    *Attorneys for Defendant Kevin Garner*