IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                                    No. CR 09-3207 JB

ANTHONY MIRABAL, DAVID AGUILAR,
and KEVIN GARNER,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Government's Notice of Intention to Offer Expert Testimony and Motion in Limine for Daubert Ruling on its Admissibility, filed August 2, 2010 (Doc. 120)("Notice"); and (ii) Defendant David Aguilar's Motion to Exclude Proposed Expert Testimony [Doc. 120] Based on Violations to Defendant's Right of Confrontation, filed August 3, 2010 (Doc. 124)("Motion").  The Court held a hearing on August 4, 2010.  The primary issue is whether the Court should exclude the testimony of Plaintiff United States of America's proposed expert witness, Drug Enforcement Administration Supervisory Forensic Chemist Jamie Eshelman, because the testimony -- which would be based on another forensic chemist's chemical testing -- would violate the Confrontation Clause of the Sixth Amendment to the Constitution of the United States.  Because the Court finds that the Supreme Court of the United States' recent decision in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), did not render inadmissible expert opinions that are based on testimonial hearsay, and because neither side questions Eshelman's qualifications or the appropriateness of the methods that she has used to arrive at her opinions, the Court will deny Aguilar's motion and deny the United States' motion in part.

The Court, however, cautions the United States that Eshelman's opinions must be her own and not a recitation of the opinions of the chemist who initially tested the substance.

## PROCEDURAL BACKGROUND

Defendants Anthony Mirabal, Kevin Garner, and David Aguilar are charged with possession with intent to distribute more than 500 grams of cocaine, conspiracy, and possessing a firearm during commission of a drug-trafficking offense. The Defendants and the United States both represent that Mirabal and Garner have reached plea agreements with the United States. The Court further understands that Mirabal and Garner have pled guilty to at least some of the charges against them, obviating the need for a trial against them. Only Aguilar is still scheduled to go to trial.

On May 28, 2010, the United States gave notice of its intent to call as a witness a forensic chemist, Karen Hall, and moved the Court to find, in limine, that Hall is an expert. See Government's Notice of Intention to Offer Expert Testimony and Motion in Limine for Daubert Ruling on its Admissibility, filed May 28, 2010 (Doc. 78). The United States planned to have Hall testify "about the tests she performed on the substance seized in connection with this case and her determination that the substances at issue contained cocaine, weighing approximately 1971 grams." Id. at 2. Aguilar filed an opposing motion in limine, seeking a ruling that such testimony was inadmissible, or, in the alternative, requesting a Daubert[1] hearing. See Motion to Exclude Proposed Expert Testimony and/or in the Alternative for Daubert Hearings, filed June 2, 2010 (Doc. 84). The Court granted the United States' motion, denied Aguilar's, and determined that a Daubert hearing was not necessary. See Memorandum Opinion and Order at 13, filed July 31, 2010 (Doc. 114).

On August 2, 2010, the United States filed a notice that it intends to call Eshelman as an

---

[1] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

expert instead of Hall. According to the United States, Eshelman "has reviewed the raw data generated by the tests performed by . . . Hall on the substance seized in connection with the arrests in the instant case." Notice at 2. Unlike Hall, who was to testify as to the tests she performed, Eshelman is expected to testify "that based on her review of [Hall's] data, the substance in question is in fact cocaine having a net weight of 1971 grams." Notice at 2.

In his motion, Aguilar objects to allowing Eshelman to testify to the results of tests that Hall performed. He asserts that such testimony would violate the Confrontation Clause because Eshelman would be, in essence, testifying to what Hall has written in her expert report. According to Aguilar, Eshelman would thus be testifying to Hall's testimonial hearsay statements without the benefit of cross-examining Hall thereon.

At the hearing, Assistant United States Attorney John Anderson explained that he recently learned that Hall was on extended medical leave and would thus be unable to testify at the trial if it begins on August 9, 2010, as it is currently scheduled. See Transcript of Hearing at 9:4-24 (taken August 4, 2010)("Tr.")(Anderson).[2] He explained that Eshelman stated to him that she would be willing and able to come and testify based on a review of the raw data that Hall's testing produced. See Tr. at 9:4-24 (Anderson). He argued that Eshelman's testimony does not implicate the Confrontation Clause, because she is going to be testifying to her own conclusions and not to Hall's conclusions. See Tr. at 9:25-10:11 (Anderson). Mr. Anderson asserted that he believes there is a crucial distinction between attempting to admit Hall's conclusions in the form of an expert report, which would be inconsistent with the Supreme Court's decision in Melendez-Diaz v. Massachusetts, and attempting to admit Eshelman's own conclusions by way of her live testimony. See Tr. at

---

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

10:12-11:15 (Anderson). He also explained the distinction between Hall's expert report, which stated Hall's conclusions, and the raw data on which Eshelman would be basing her expert opinion. See Tr. at 17:11-18:7 (Anderson).

Ms. Johnson disagreed, arguing that this case is directly on point with Melendez-Diaz v. Massachusetts and that the Court should bar anyone except Hall from testifying regarding the tests that Hall performed. See Tr. at 11:18-12:23 (Johnson). The Court then asked Mr. Anderson exactly what Eshelman was going to say on the witness stand. Mr. Anderson stated that he would begin her testimony by asking if she had reviewed the data generated by Hall's testing, without specifying what that data was or what the results of Hall's tests were. See Tr. at 16:20-17:5 (Court, Anderson).[3] He stated that Eshelman will offer her own expert opinion based upon the raw data. See Tr. at 18:3-10 (Anderson). That solution did not satisfy Ms. Johnson, who continued to object to any testimony regarding the composition of the substance seized, except from Hall herself. See Tr. at 18:15-19:7 (Johnson).

## **RELEVANT LAW REGARDING THE CONFRONTATION CLAUSE**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that, consistent with the Sixth Amendment, "[t]estimonial [hearsay] statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. See id. at 53 (noting specifically that the Sixth Amendment's primary concern is "testimonial hearsay"). In Davis v. Washington, 547 U.S. 813

---

[3] Mr. Anderson agreed that admitting Hall's report would violate the Confrontation Clause under Melendez-Diaz v. Massachusetts. See Tr. at 17:6-10 (Court, Anderson).

(2006), the Supreme Court further elaborated on what a "testimonial" statement is:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822. The Tenth Circuit has restated this rule in two ways, though has not yet expressed which definition it will ultimately prefer. A testimonial statement is either: (i) "a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution," or (ii) "[a] formal statement" made in a situation where "a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime." United States v. Smalls, 605 F.3d 765, 778 (10th Cir. 2010).

In Melendez-Diaz v. Massachusetts, the Supreme Court addressed whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit that the substance which police seized from the defendant was cocaine of a certain amount, violated the Confrontation Clause. The Supreme Court first found that such affidavits were testimonial, because they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and because, under Massachusetts law, the sole purpose of the affidavit was to provide prima facie evidence of the content of the substance seized. 129 S. Ct. at 2531-32. The Supreme Court then used the affidavit introduced by the prosecution to outline its concerns regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine." At the time of trial, petitioner did

> not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed. While we still do not know the precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs," At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

129 S. Ct. at 2537. Because there was no opportunity to cross-examine on these issues, the Supreme Court concluded that introduction of the affidavit violated the defendant's rights under the Confrontation Clause. See 129 S. Ct. at 2542 ("The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error.").

## **ANALYSIS**

First, the Court notes that, although Aguilar raises an objection to the introduction of Eshelman's proposed testimony, he does not contest Eshelman's qualifications to testify as an expert in forensic chemistry or the methodology she has employed to arrive at her conclusions.[4] Moreover, the parties had previously concurred that the Court did not need to hold a Daubert hearing on Hall's qualifications, and neither party indicated that they believed such a hearing is necessary with respect to Eshelman. The Court has reviewed Eshelman's curriculum vitae and the testimony that the United States plans to elicit from her, and concludes, without opposition from Aguilar, that Eshelman is qualified to testify as an expert in forensic chemistry. The Court will thus grant in part and deny in part the United States' Notice. The Court finds Eshelman qualified as an expert forensic chemist, but denies the United States' alternative request for a Daubert hearing on that issue.

---

[4] In one sense, Aguilar is challenging the method that Eshelman is using -- she is arguing that Eshelman cannot rely on Hall's notes without violating his Confrontation Clause rights. On the other hand, that is a legal, constitutional question. Aguilar does not question that one chemist can, successfully, rely upon the notes of another chemist to form an opinion.

The United States seeks to introduce testimony by Eshelman, a forensic chemist and Hall's supervisor, regarding the content and quantity of the material that officers seized from the Defendants. Eshelman will testify, not from Hall's conclusions, but from the raw data that Hall's tests produced. Aguilar asserts that such testimony is tantamount to introduction of Hall's expert report, which the Supreme Court in Melendez-Diaz v. Massachusetts held violated the Confrontation Clause. Because the Court finds that this case is distinguishable from Melendez-Diaz v. Massachusetts in that, in this case, Aguilar will have the opportunity to cross-examine the witness testifying against him, the Court will not exclude Eshelman's testimony. The Court will caution the United States, however, that Eshelman's conclusions must be her own, and not a parroting of Hall's opinions.

Before beginning its research into this issue, the Court was inclined to find that Eshelman's testimony was admissible. Eshelman is an experienced chemist whom the Court believes would testify based on her specialized, scientific knowledge, applying reliable scientific principles to facts or data, resulting in an opinion. See Fed. R. Evid. 702. The Court realized that the expert report of Hall was inadmissable under Melendez-Diaz v. Massachusetts, but, notwithstanding that inadmissibility, Eshelman could rely upon that report, because the materials that form the basis of an expert opinion need not, themselves, be admissible, so long as they are of a type "reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. Moreover, Mr. Anderson represented that Eshelman would be testifying based, at least primarily, upon the raw data that Hall's experiment produced, not upon Hall's report or Hall's expert opinion. See Tr. at 16:20-18:10 (Court, Anderson). The person whose opinions are being presented will be live in the courtroom and available for cross-examination, thus satisfying the Confrontation Clause. The situation is not materially different from the situation where a medical doctor -- having looked at other doctors'

notes -- gives his or her own opinion about a patient's condition and prognosis. Because Eshelman is both a forensic chemist and Hall's supervisor, Aguilar's counsel will be able to cross-examine Eshelman on the issues of "what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed." Melendez-Diaz v. Massachusetts, 129 S. Ct. at 2537. She would also be able to cross-examine Eshelman on the fact that Eshelman did not, herself, performed the tests and inquire about the possibility that Hall had performed the tests incorrectly.

    The Court's research demonstrates that other courts have come to the same conclusion as the Court has, although the Tenth Circuit does not appear to have yet addressed the issue. The United States Court of Appeals for the Fourth Circuit addressed a similar issue in United States v. Johnson, 587 F.3d 625 (4th Cir. 2009), another drug-trafficking case. In United States v. Johnson, one of the United States' expert witnesses testified regarding code words that drug-traffickers used to conceal the contents of their conversations. See 587 F.3d at 633-34. The testimony was to help the jury understand the meaning of some recorded telephone conversations that the court admitted into evidence. See id. Johnson objected, because the witness admitted that his opinion was based, in part, on information that he received from a confidential informant during an interview. See id. Johnson argued that such testimony was tantamount to presenting the informant's testimonial hearsay statements to the jury. See id. The district court overruled the objection, and the Fourth Circuit affirmed. See id. at 634-35. In the opinion for the Fourth Circuit, the Honorable J. Harvie Wilkinson III, United States Circuit Judge, admitted that the informant's statements to the expert were likely testimonial, but found that the witness' testimony, even if it relied upon those statements, raised no Confrontation-Clause problems.

    An expert witness's reliance on evidence that Crawford [v. Washington] would bar

> if offered directly only becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation. Allowing a witness simply to parrot out-of-court testimonial statements . . . to the jury in the guise of expert opinion would provide an end run around Crawford. For this reason, an expert's use of testimonial hearsay is a matter of degree. The question is whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay. As long as he is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no Crawford problem. The expert's opinion will be an original product that can be tested through cross-examination.
>
> This is as it should be because expert witnesses play a valuable role in our criminal justice system. As recognized in Federal Rule of Evidence 702, experts often assist the trier of fact to understand the evidence or to determine a fact in issue. To better fulfill this role, experts are permitted to consider otherwise inadmissible evidence as long as it is of a type reasonably relied upon by experts in the particular field. Fed. R. Evid. 703. Some of the information experts typically consider surely qualifies as testimonial under Crawford. Were we to push Crawford as far as [the defendant] proposes, we would disqualify broad swaths of expert testimony, depriving juries of valuable assistance in a great many cases. Here, for example, it was permissible for the district court to conclude that the expert testimony would help the jury understand exchanges that might otherwise appear nonsensical or impenetrable.

United States v. Johnson, 587 F.3d at 635 (internal quotation marks and citations omitted). Judge Wilkinson concluded that, because the expert presented his own, independent judgments and was present to be cross-examined, there was no Confrontation Clause problem. See id. at 636.[5]

The United States Court of Appeals for the Seventh Circuit held similarly in United States v. Turner, 591 F.3d 928 (7th Cir. 2010), in a factual situation similar to that before the Court. In United States v. Turner, Danny Turner was convicted of dealing crack cocaine. See id. at 930. The forensic chemist who tested the material seized from Turner was Amanda Hanson, but, because

---

[5] Although the analysis of United States v. Johnson refers to Crawford v. Washington, the Fourth Circuit addressed Melendez-Diaz v. Massachusetts before it concluded its opinion and found that Melendez-Diaz v. Massachusetts did not change its analysis. See United States v. Johnson, 587 F.3d at 636 ("[U]nlike the defendant in Melendez-Diaz, [Johnson and his co-defendants] had the opportunity to test the experts' 'honesty, proficiency, and methodology' through cross-examination.").

Hanson was on maternity leave at the time of the trial, the United States called Hanson's supervisor, Robert Block, to testify in her stead. See id. Turner sought to have Block's testimony excluded, arguing that it would violate the Sixth Amendment. See id. The district court denied the motion, and the Seventh Circuit affirmed. See id. at 934. Like the Fourth Circuit, the Seventh Circuit concluded that "[n]o [Confrontation-Clause] problem exists," because "nothing from Hanson's notes, machine test results, or her final report was introduced into evidence." 591 F.3d at 932. It relied on a prior, pre-Melendez-Diaz opinion in which it found:

> [The witness] testified as an expert, not as a fact witness. When the expert testifies, "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703. So if the Confrontation Clause precludes admitting [the expert's] report, this does not spoil [the chemist's] testimony.

United States v. Turner, 591 F.3d at 932 (quoting United States v. Moon, 512 F.3d 359, 361 (7th Cir. 2008)). The Seventh Circuit concluded that Block's testimony was admissible because "the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself." United States v. Turner, 591 F.3d at 933 (quoting United States v. Moon, 512 F.3d at 361). In addressing Melendez-Diaz v. Massachusetts, the Seventh Circuit found that the case did not control, because "Block testified as an expert witness presenting his own conclusions about the substances in question to the jury." United States v. Turner, 591 F.3d at 934.[6]

---

[6] Several state courts have come to the same conclusion. See State v. Dilboy, 160 N.H. 135, 2010 WL 1541447, at *10 (2010)(unpublished)("Dr. Wagner generated opinions based upon his review of the test results, and the defendant had the opportunity to cross-examine him regarding his opinions as well as the laboratory procedures and test results."); id. ("Melendez-Diaz simply did not determine whether the technician or analyst who performed the scientific tests at issue must testify at trial. . . . Unlike the certificates at issue in Melendez-Diaz, Dr. Wagner was available for confrontation and cross-examination."); Commonwealth v. Avila, 454 Mass. 744, 762, 912 N.E.2d 1014, 1029 (2009)(holding that a "substitute medical examiner, as an expert witness, is not permitted on direct examination to recite or otherwise testify about the underlying factual findings of the unavailable medical examiner as contained in the autopsy report," but that she may testify "to

The Court's analysis is confirmed by that of the Fourth and Seventh Circuits. Based on that analysis, the Court will not exclude Eshelman's testimony in this case. So long as Eshelman testifies to her own, independent expert opinions, based on the data generated by Hall's testing of the substance seized from the Defendants, her testimony will create no Confrontation Clause problems. The Court cautions the United States, however, that Eshelman's opinions must be her own and not a parroting of Hall's opinions. See United States v. Johnson, 587 F.3d at 635 ("Allowing a witness simply to parrot out-of-court testimonial statements . . . to the jury in the guise of expert opinion would provide an end run around Crawford."). While the difference might be difficult to detect -- two experts with similar qualifications will often reach the same result if given the same data -- the Court admonishes the United States to be intellectually honest in this respect. If it appears to the United States that Eshelman will not be relying upon her own expertise in arriving at her conclusions, the viability of the United States' case and the integrity of the judicial system might be better served by attempting to rescheduling the trial to a time at which Hall is available. The United States must also be careful not to introduce any of Hall's testimonial hearsay statements, such as notes or memoranda relating to her analyses of the test results.

Rule 703 prohibits the introduction of any inadmissible facts or data upon which an expert relies, unless certain conditions are met. See Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless

---

his or her own opinions," because, "as to these, the expert is available for cross-examination."); Wood v. State, 299 S.W.3d 200, 213 (Tex. App.–Austin, 2009)("[T]he Confrontation Clause is not violated merely because an expert bases an opinion on inadmissible testimonial hearsay. The testifying expert's opinion is not hearsay, and the testifying expert is available for cross-examination regarding his opinion."); State v. Hough, 690 S.E.2d 285, 290-91 (N.C. App. 2010)(holding that an expert's opinion, based in part on another expert's tests, was admissible, because "her expert opinion was based on an independent review and confirmation of test results").

the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). While Aguilar can cross-examine Eshelman about the data on which she relies, see Fed. R. Evid. 705 ("The expert may . . . be required to disclose the underlying facts or data on cross-examination."), to the extent that the data is inadmissible, the United States is limited to eliciting Eshelman's opinions, and may not disclose through her the inadmissible data, see Fed. R. Evid. 703. The Court will be vigilant, on objections by Aguilar, to exclude testimony regarding any inadmissible data on which Eshelman relies.

The situation is similar to a case in which a medical doctor gives conclusions based on the examinations of other doctors. The drafters of the Federal Rules of Evidence thought the nature and reality of modern expert testimony warranted modifying the common law rule, which required the expert to opine only on facts that were in evidence. The Rules Advisory Committee noted that rule 703's expansion of the bases upon which an expert may form his or her opinion was intended to "bring the judicial practice into line with the practice of the experts themselves when not in court." Fed. R. Evid. 703 advisory committee's note. For example,

> a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Fed. R. Evid. 703 advisory committee's note. The Court finds that the same reasoning holds true for the expert testimony of a forensic chemist. A chemist routinely relies on the notes and body of knowledge of others to form opinions; no chemist replicates all that has heretofore been done to get to this point in science.

Ms. Johnson expressed concern that one fact to which Eshelman will testify is the weight of the substance seized from the Defendants and that Eshelman never weighed the substance herself. See Tr. at 18:18-19:7 (Johnson). The Court does not believe that will be a problem. According to the United States' Notice, Eshelman is going to testify to the net weight of cocaine in the substance. She will presumably arrive at this number by taking the gross weight of the substance seized from the Defendants and the results of whatever chemical analyses were run on that substance, and then determining the total weight of the cocaine contained therein. She will arrive at her testimony, not by parroting Hall's results, but by relying on Hall's raw data to formulate her independent expert opinion. Ms. Johnson will be free to cross-examine Eshelman whether she weighed the substance herself, and, if the answer is no, the possibility that Hall mis-weighed it.

If Eshelman seeks to testify to the gross weight of the seized substance, and if Eshelman's only knowledge of the gross weight comes from Hall's report, there might be a hearsay or Confrontation Clause problem. Eshelman would be testifying to a fact, her only knowledge of which comes from a hearsay document, and that fact would be presented to prove the truth of the matter asserted. If Eshelman is the United States' only witness on weight, there may be no evidence on weight, creating a major hole in the United States' case. On the other hand, the Court does not know whether Eshelman weighed the substance herself; it is possible that she has weighed the substance, that she read the weight from the scale when Hall weighed the substance, or that she will weigh the substance before trial. Moreover, the Court does not know if Eshelman will attempt to testify to the gross weight of the substance at trial. At this point, therefore, Ms. Johnson is speculating about Eshelman's testimony and the underlying facts of the case, and asking the Court to rule certain testimony inadmissible in advance of trial. The Court finds that it would be inappropriate to grant Aguilar's motion in limine. Aguilar is, of course, free to re-assert his

argument as an objection should Eshelman attempt to testify to the gross weight of the substance that officers seized from the Defendants or make another motion if there is lack of proof on an essential element on which the United States bears the burden of proof.

**IT IS ORDERED** that: (i) the Government's Notice of Intention to Offer Expert Testimony and Motion in Limine for Daubert Ruling on its Admissibility is granted in part and denied in part, with the Court permitting Jamie Eshelman to offer expert opinions that she has formed; and (ii) Defendant David Aguilar's Motion to Exclude Proposed Expert Testimony [Doc. 120] Based on Violations to Defendant's Right of Confrontation is denied, without prejudice to Aguilar re-raising the issues therein at trial if the evidence comes in differently, or appears to be coming in differently, than the Court anticipates in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
John C. Anderson
Nicholas Jon Ganjei
  Assistant United States Attorneys
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Leon Encinias
Albuquerque, New Mexico

   *Attorney for Defendant Anthony Mirabal*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorney for Defendant David Aguilar*

Robert J. Gorence
Gorence & Oliveros, PC
Albuquerque, New Mexico

    *Attorneys for Defendant Kevin Garner*